IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**JENNY ESPINAL TEJADA**, | Case No. 2:24-cr-00165-JDW |

## MEMORANDUM

When a defendant decides to plead guilty, it's a big deal. She is choosing to waive her right to a jury trial, which is the bedrock right that undergirds the criminal justice system in this country. Because it's such a big deal, judges conduct lengthy hearings to confirm that a defendant understands the consequences of the choice to plead guilty. That is, the hearing ensures that the waiver is knowing, intelligent, and voluntary. The hearing is not kabuki theater. It is, instead, a real opportunity for a defendant to understand and consider the merits of her choice to plead guilty and then to confirm that choice.

When Jenny Espinal Tejada decided to plead guilty, she appeared before me to confirm that she understood the weighty choice she was making. Assisted by an interpreter, she assured me of her understanding and her desire to plead guilty. She elected to go forward even after I cautioned her about the maximum penalty she faced, reminded her that no one could guarantee what sentence I would impose, and warned her that a guilty plea could lead to her deportation. She acknowledged all that and still

chose to go forward, but now she claims that her counsel was ineffective because he told her something different before the hearing. But that's why I conducted a colloquy with her, and if I told her something different than her counsel had told her, she had the opportunity to clarify. The Third Circuit has held that plea agreements and guilty plea colloquies that cure any incorrect advice from counsel bar a claim for ineffective assistance for counsel, so Ms. Tejada's claim fails.

Ms. Tejada also claims that her counsel was ineffective for not putting before me her tax records that showed she made only a small profit from her criminal conduct. But those records didn't matter for the Sentencing Guidelines calculation and wouldn't have impacted my analysis under 18 U.S.C. § 3553(a). Because they would not have had any impact, her counsel could not have been ineffective for failing to submit them. I will therefore deny Ms. Tejada's Motion to vacate, set aside, or correct her sentence.

**I.     BACKGROUND**

**A.     Pre-Trial Proceedings And Guilty Plea**

On April 23, 2024, a grand jury returned an indictment charging Ms. Tejada with ten counts of wire fraud and ten counts of SNAP benefits fraud. On July 30, 2024, a grand jury returned a superseding indictment, charging her with an additional four counts of wire fraud and four counts of SNAP benefits fraud. Ms. Tejada retained Craig A. Sopin, Esq. as counsel.

On October 16, 2024, Ms. Tejada and the United States entered into a plea agreement by which the Government agreed to dismiss twenty-six of the twenty-eight counts in the superseding indictment. The agreement outlined the statutory maximum penalties for each offense, stated that no one could promise or guarantee the sentence the Court would impose, and recited the potential immigration consequences of the conviction. The Parties also stipulated that Ms. Tejada's scheme involved the illegal and unauthorized redemption of $1,841,402.37 in SNAP benefits.

I conducted a change of plea hearing with the assistance of an interpreter on October 25, 2024. During that hearing, I confirmed with Ms. Tejada that she understood the process that led to the plea agreement, that she signed it voluntarily, that someone had translated it for her, and that she had consulted with her lawyer and reviewed it before signing. She confirmed that she understood its terms and had no questions. I also explained to Ms. Tejada the maximum possible sentence for the two counts to which she would plead guilty, including up to 25 years' imprisonment, three years of supervised release, a $500,000 fine, and a $200 special assessment. She said she understood. I then explained that her guilty plea could lead to deportation after any prison sentence I imposed. She again confirmed her understanding. I cautioned her that no one could guarantee what sentence she would receive and that I could impose a sentence above or below what the range suggested in the Sentencing Guidelines. I then asked counsel for the Government to recite the elements of the charge and to recite the facts the

Government contends it would have proved beyond a reasonable doubt had Ms. Tejada elected to go to trial. Ms. Tejada confirmed that she did what the Government said. She then pled guilty.

The U.S. Probation Office began preparing a presentence investigation report after the hearing. Although Probation requested Ms. Tejada's 2022 and 2023 tax returns and related financial records, she did not provide them. At the sentencing hearing on February 4, 2025, Mr. Sopin reported that Ms. Tejada had brought certain tax records that had not previously been provided to the Probation Office for inclusion in the PSR. I told Mr. Sopin that neither Probation nor the Court could review new materials at that stage. At the close of the hearing, I sentenced Ms. Tejada to eighteen months' imprisonment on each count, to run concurrently, three years of supervised release, and restitution of $1,841,402.37.

B.    **Section 2255 Motion**

On July 31, 2025, Ms. Tejada filed a Motion To Vacate, Set Aside, Or Correct A Sentence Pursuant to 28 U.S.C. § 2255. (*See* ECF No. 58.) In her Motion, Ms. Tejada asserts three grounds for relief, each premised on alleged ineffective assistance of counsel: (1) counsel told her she would not go to prison if she pled guilty; (2) counsel told her she would not be deported if she pled guilty; and (3) counsel failed to provide business tax records before sentencing, which she says would have reduced her sentence and restitution.

## II. LEGAL STANDARD

Section 2255(a) permits a prisoner serving a federal sentence to move the sentencing court to "vacate, set aside, or correct the sentence" where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief pursuant to § 2255(a), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quotation omitted). This heightened standard reflects "the great interest in finality of judgments," which "has special force with respect to convictions based on guilty pleas." *Id.* (quotation omitted).

Section 2255(b) requires a district court to hold a hearing to resolve the issues and make factual findings and legal conclusions on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...." 28 U.S.C. § 2255(b). In determining whether a hearing is warranted, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The district court need not investigate a movant's claims based on "vague and conclusory allegations." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). However, if the movant alleges any non-frivolous facts that, accepted as true, would warrant relief under §

5

2255(a), then the court must hold an evidentiary hearing to resolve the motion. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

## III. ANALYSIS

Because all of Ms. Tejada's arguments allege ineffective assistance of counsel, the familiar standard from *Strickland v. Washington*, 466 U.S. 668 (1984) governs. Under *Strickland's* two-part inquiry, Ms. Tejada "must show that counsel's performance was deficient" by demonstrating that her "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In addition, Ms. Tejada "must show that the deficient performance prejudiced the defense." *Id.* To make this showing in a case involving a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A. Deportation And Incarceration

Ms. Tejada cannot prevail on her ineffective assistance claim because, even assuming she could show that Mr. Sopin erred in advising her about the sentence and deportation she faced, she cannot establish that his advice affected her decision to plead guilty. If a lawyer provides his client erroneous sentencing information, but the plea

agreement and colloquy correct that error, a defendant cannot succeed on an ineffective assistance of counsel claim. *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007).

The plea agreement listed the maximum penalties for counts 1 and 15. It also informed Ms. Tejada that her guilty plea would subject her to immigration proceedings and could likely result in her removal. The agreement cautioned that no one could predict the precise effect on her immigration status and included an explicit waiver of any challenge to her conviction or sentence based on those consequences.

During the plea colloquy, Ms. Tejada, through an interpreter, confirmed for me that she had read and fully understood the terms of the agreement. Then, in response to my questioning, she acknowledged (a) the maximum penalties that applied to her case, (b) that no one could guarantee what sentence she might get (including whether she would go to prison), and (c) that a guilty plea could expose her to deportation. My detailed in-court plea colloquy (which accurately explained Ms. Tejada's sentencing and immigration risk exposure) and the plea agreement thus corrected any incorrect information that Ms. Tejada's counsel might have provided. The existing record resolves these claims, so there is no need for a hearing.

**B.    Tax Documents**

To the extent Ms. Tejada seeks to use her tax records to challenge the restitution order that I entered, Section 2255 provides no relief. Section 2255 is available only to a prisoner "in custody … claiming the right to be released." 28 U.S.C. § 2255(a); *see also*

7

*United States v. Norwood,* 49 F.4th 189, 206 (3d Cir. 2022). An order of restitution alone does not satisfy the custody requirement of Section 2255. *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003). Thus, Ms. Tejada's her restitution challenge is not cognizable. *United States v. Trimble*, 12 F. Supp. 3d 742, 746 (E.D. Pa. 2014); *Norwood*, 49 F.4th at 206.

Even if I treat her argument as a challenge to her sentence, it fares no better. Ms. Tejada stipulated to the loss amount of $1,841,402.37, and she confirmed that stipulation at the plea hearing. The Third Circuit enforces such stipulations, and she cannot now avoid hers by asserting that the loss should have been offset by her cost of goods sold. *See, e.g., United States v. Cepero*, 224 F.3d 256, 264–65 (3d Cir. 2000).

Nor would the tax records have changed her Guidelines range calculation. In cases involving government benefits, the loss is the value of the benefits obtained. Profit does not matter. *See* U.S.S.G. § 2B1.1(b)(1); *id.* cmt. n.3(C)-(D). Because Ms. Tejada was never authorized to redeem SNAP benefits, every dollar she obtained was an improper payment and therefore part of the loss. Overhead and inventory costs do not fall within any of the "Credits Against Loss" that the Guidelines recognize. *Id.* cmt. n.3(D). The documents might have shown her net profit, but that has no bearing on the loss amount or offense level.

The records also would not have influenced my 18 U.S.C. § 3553(a) analysis. I found her offense serious because it exploited the SNAP program, undermined its purpose, and took advantage of vulnerable recipients. Her personal history showed she otherwise lived a law-abiding life, but that did not outweigh the need for punishment and deterrence. A

custodial sentence was necessary to reflect the seriousness of the offense and to deter others. The fact that her business might have had narrow margins would not have changed the analysis.

## IV.     CONCLUSION

I will deny Ms. Tejada's motion without an evidentiary hearing because her ineffective assistance of counsel claims cannot prevail in light of the existing record. Also, because Ms. Tejada hasn't made a "substantial showing of the denial of a constitutional right," and no reasonable jurist would debate that finding, I will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 5, 2025